UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| JAMES L. VARNER, | ) | CIV. 09-5076-JLV |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING |
| | ) | DEFENDANT'S MOTION |
| vs. | ) | FOR EXPENSES AND FEES |
| | ) | |
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the court pursuant to defendant's motion for expenses and fees incurred as a result of a failed Daubert hearing[1] in the above-captioned case. (Docket 53). Plaintiff filed no response to defendant's motion, and the time for doing so has passed. Defendant's motion is ripe for adjudication.

**FACTS AND PROCEDURAL HISTORY**

The court limits its recitation to those facts necessary to resolve defendant's pending motion. The court's recitation constitutes its findings of fact in support of this order. Additional findings of fact are contained in the court's discussion of the relevant case law and its application to this case.

On September 23, 2009, plaintiff James L. Varner brought suit against defendant BNSF Railway Company ("BNSF") under the Federal Employers'

---

[1]The hearing takes its name from Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.* (Docket 1). At the time of the alleged events giving rise to the complaint, BNSF employed Mr. Varner as a track inspector. Id. at ¶ 4. Mr. Varner alleges, on December 28, 2007, while inspecting the railroad track near Edgemont, South Dakota, he saw a large mule deer carcass on the main track. Id. at ¶¶ 4-7. Mr. Varner alleges he attempted to move the deer, but in the process lost his balance and fell down the ballast between the track and road. Id. at ¶¶ 12-16. Mr. Varner alleges he sustained injury to his right shoulder, the tendon in his right bicep, and two of his right ribs, requiring arthroscopic surgery to remove bone and tissue fragments. Id. at ¶¶ 17-18. Mr. Varner alleges his injuries likely will lead to the development of degenerative arthritis in his right shoulder, necessitating a future shoulder replacement and reducing his work-life expectancy. Id. at ¶ 19.

Mr. Varner alleges the negligent acts or omissions of BNSF violated BNSF's duty under FELA and caused his injuries. Id. at ¶¶ 21, 25, & 26. In particular, Mr. Varner points to the alleged failure of BNSF to do the following: provide adequate training and equipment to safely remove deer carcasses; promulgate and follow reasonable safety policies and procedures; provide adequate support from other employees to minimize his physical burden and risk of injury; and recognize his job duties were reasonably likely to cause injury. Id. at ¶ 23. Mr. Varner seeks an award of damages to compensate him for past and future economic and non-economic losses. Id. at ¶ 27.

On October 14, 2009, BNSF filed its answer, denying the allegations in the complaint and asserting various affirmative and other defenses. (Docket 9). Discovery commenced. On June 9, 2010, Mr. Varner served BNSF with his expert disclosures under Fed. R. Civ. P. 26(a)(2). (Docket 34). Mr. Varner disclosed his retainer of Dr. Michael D. Shinnick as an expert in the field of ergonomic safety in the workplace. (Docket 43 at p. 2). Mr. Varner timely served BNSF with a copy of Dr. Shinnick's report, in which Dr. Shinnick opined, in part, BNSF's acts or omissions "unreasonably and unnecessarily exposed [Mr. Varner] to the risk factors associated with acute injury." (Docket 43, Exhibit A at p. 13).

On August 23, 2010, BNSF filed a motion to exclude the testimony of Dr. Shinnick. (Docket 42). BNSF argued the testimony of Dr. Shinnick did not satisfy the requirements of Fed. R. Evid. 702 and 402 in the following respects: (1) Dr. Shinnick lacked the necessary knowledge, skill, education, training, or experience to qualify as an expert witness; (2) Dr. Shinnick did not base his opinions on scientific, technical, or other specialized knowledge; (3) Dr. Shinnick did not base his opinions on substantial data, a rational and reliable foundation, or scientifically valid principles; and (4) Dr. Shinnick's opinions were not relevant to the issues in this case and constituted inadmissible legal conclusions. Id. at pp. 1-2. Mr. Varner resisted the motion in its entirety. (Docket 46).

The court found it necessary to schedule a <u>Daubert</u> hearing to resolve BNSF's motion. The court conferred with counsel for both parties to schedule

the hearing. The court also informed counsel that, upon conclusion of the hearing, the court intended to hold a status conference to schedule the pretrial conference and trial in this case. On October 26, 2010, the court entered an order scheduling the Daubert hearing for December 30, 2010, a date agreed upon by the parties' counsel. (Docket 49).

On December 14, 2010, in response to a request for information by the court, counsel for both parties jointly e-mailed the court with information necessary to schedule the pretrial conference and trial. Counsel advised when they, their clients, and their witnesses, including expert witnesses, would be available for trial. After several e-mail communications between the court and counsel, the court ultimately suggested a pretrial conference date of May 16, 2011, and a beginning trial date of June 27, 2011. On December 28, 2010, counsel for both parties informed the court of their approval of the proposed dates.

As scheduled, the court convened for a Daubert hearing on December 30, 2010. Mr. Varner appeared by and through his counsel, G. Michael O'Neal, and Gregory Eiesland.[2] BNSF appeared by and through its counsel, Thomas Sattler.[3]

The court first set out the legal standards governing the admissibility of evidence under Fed. R. Evid. 702. Counsel agreed with the court's recitation.

---

[2]Mr. O'Neal practices law in Kansas City, Missouri. Mr. Eiesland practices locally.

[3]Mr. Sattler practices law in Lincoln, Nebraska.

4

The court then turned to Mr. O'Neal, as the proponent of the challenged expert testimony, to proceed with his case. Mr. O'Neal informed the court Dr. Shinnick was not available to testify at the hearing and provided the following explanation:

> First of all, Your Honor, Dr. Shinnick is not available as a witness to testify today because of the holidays. Part of the problem was travel and his own commitments and he simply could not make this trip. Plaintiff's counsel [and] I felt at the point in time we were also going to have a status conference, and consequently I felt that we needed to get that out of the way as well as have this hearing. I have filed Dr. Shinnick's deposition with the Court as well as the plaintiff's deposition. His report is an exhibit attached to our briefs. And simply one of timing, I apologize for not having Dr. Shinnick here personally.
>
> That always creates a problem that I was kind of caught between a rock and a hard place as far as proceeding with this case and the status or trying to work out another date with the Court's busy schedule.
>
> And with that, does the Court desire a brief statement of the facts of the case?

(HT 7:1-18).[4]

The court declined as both parties fully briefed the relevant facts and legal arguments. (HT 7:19-20). The court noted, "It's very difficult to conduct a Daubert hearing without the proposed expert witness." (HT 7:22-24). Mr. O'Neal provided further justification for Dr. Shinnick's absence, as follows:

---

[4]The court refers to the transcript of the December 30, 2010, hearing as "HT" followed by the page number(s) and line number(s) where the corresponding information may be found. For example, information found at lines 1-18 on page 7 of the transcript would be referred to as "HT 7:1-18."

> I apologize to the court. I felt he could be available, but the time and, I guess, I should have been -- with the rest of the holidays I should have asked for a continuance. I was kind of concerned about it also being a status conference and, of course, if I understand the situation of the Court, and I would offer to the Court to try to work out an available date with the Court's schedule as well as our schedule. I just, with the lightness in the year and holidays, and the status conference, I was just concerned that something would happen, and I apologize for his unavailability. I thought something would work out and I understand what the Court is advising me.

(HT 7:25; 8:1-12).

The court explained how the unavailability of Dr. Shinnick frustrated the purpose of a <u>Daubert</u> hearing: "I cannot make a determination on the Daubert standards without the witness, Mr. Shinnick, on the stand where you then can go ahead and put on the evidence you need to carry the burden of proof, or Mr. Sattler can demonstrate that it can't be carried and that Mr. Shinnick is not an appropriate witness for the case." (HT 8:24-25; 9:1-5).

The court made further record on this issue by inquiring when Mr. O'Neal and Mr. Sattler learned of Dr. Shinnick's unavailability. (HT 9:12-13; 16:1-6). Mr. Sattler indicated he learned of Dr. Shinnick's unavailability only upon his arrival at the hearing. (HT 9:14-16). Mr. O'Neal stated he learned of Dr. Shinnick's unavailability "[j]ust prior to Christmastime he [Dr. Shinnick] became -- because of the holidays and he's at home and he had family." (HT 16:7-9). Mr. O'Neal further explained as follows:

> I have known for a week, yes, Your Honor, and I apologize to the Court. Kind of the rush of the holidays and I had a minor sickness like Your Honor can appreciate, and I was concerned about the status conference, I think, of being this week; this week we were exchanging e-mails and I do again apologize on behalf of myself to the

6

> Court for any waste of time. I was concerned about resolving at least the status conference.

(HT 16:11-18).

After confirming the availability of counsel and Dr. Shinnick, the court rescheduled the Daubert hearing for March 16, 2011.[5] (HT 15:3-12). The court confirmed the dates set for the pretrial conference and commencement of trial–dates agreed upon by the parties prior to the hearing.[6] (HT 10:19-25; 11:1-14). The court also invited Mr. Sattler to file an appropriate motion on behalf of BNSF to recover its fees and costs associated with the failed Daubert hearing. (HT 9:25; 10:1-2).

On January 10, 2011, BNSF filed a motion for expenses and fees, seeking reimbursement only for its excess costs, expenses, and attorney's fees reasonably incurred as a result of the multiplication of the Daubert hearing. (Docket 53). BNSF argues Mr. O'Neal's conduct, that is, his failure to timely notify the court of Dr. Shinnick's unavailability, caused the unnecessary multiplication of proceedings. Id. BNSF argues Mr. O'Neal's conduct "was unreasonable and shows a reckless disregard of the attorney's duties to the Court." Id. at p. 2.

BNSF seeks reimbursement for the following expenses: (1) travel costs incurred by Mr. Sattler to attend the December 30, 2010, hearing;

---

[5] The court entered a scheduling order to that effect on January 3, 2011. (Docket 51).

[6] The court entered a scheduling order to that effect on January 3, 2011. (Docket 52).

7

(2) attorney's fees charged by Mr. Sattler to prepare for and attend the December 30, 2010, hearing; and (3) attorney's fees charged by Mr. Sattler to draft the instant motion and supporting documentation.  (Dockets 55 & 56).  BNSF seeks a total award of $4,584.38, comprised of $3,570 in attorney's fees and $1,014.38 in costs.  (Docket 55, Attachment A).  BNSF argues such an award is proper under 28 U.S.C. § 1927 and the court's inherent power to award sanctions.  (Dockets 53 & 54).

Mr. Varner's response to BNSF's motion was due on or before February 3, 2011.  See D.S.D. Civ. LR 7.1(B), Fed. R. Civ. P. 6(a)(1), and Fed. R. Civ. P. 6(d).[7]  Mr. Varner did not file any response or otherwise communicate with the court.  Accordingly, BNSF's motion is ripe for review.

---

[7]This district's local rule requires a party opposing a substantive motion to file a responsive brief within 21 calendar days *after service of the motion*. D.S.D. Civ. LR 7.1(B) (emphasis added).  Fed. R. Civ. P. 6(a)(1) directs a party, when computing a deadline, to exclude the day of the event that triggers the period and to count every day, including Saturdays, Sundays, and legal holidays, unless the last day of the period falls on a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1).  In such cases, the period continues to run until the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).  BNSF filed its motion on January 10, 2011.  Mr. Varner's 21-day response period began to run on January 11, 2011.  The period ran until January 31, 2011.  The court gave Mr. Varner the benefit of Fed. R. Civ. P. 6(d), which states "[w]hen a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a)."  Fed. R. Civ. P. 6(d).  BNSF served Mr. Varner under Rule 5(b)(2)(E), the provision for electronic service.  See Fed. R. Civ. P. 5(b)(2)(E).  Thus, Rule 6(d) extended Mr. Varner's response deadline to February 3, 2011.

**DISCUSSION**

**A.   Authority Under 28 U.S.C. § 1927 to Award Fees and Costs**

Section 1927 of Title 28 of the United States Code confers upon the court the authority to "require counsel to satisfy *personally* attorneys' fees reasonably incurred by an opposing party when counsel's conduct 'multiplies the proceedings in any case unreasonably and vexatiously.' " Clark v. United Parcel Service, Inc., 460 F.3d 1004, 1011 (8th Cir. 2006) (emphasis added) (quoting 28 U.S.C. § 1927).  Section 1927 provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  Black's law dictionary defines "vexatious" as "without reasonable or probable cause or excuse; harassing; annoying." Black's Law Dictionary 1559 (7th ed. 1999).  It defines "unreasonable" as "[n]ot guided by reason; irrational or capricious." Id. at 1537.

Section 1927 focuses on the conduct of the movant's opposing counsel. Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 724 (8th Cir. 2008); see also Roadway Express, Inc. v. Piper, 447 U.S. 752, 757 (1980) ("[Section] 1927 deals only with attorney conduct and involves taxing costs against counsel.").[8]  As explained by the United States Supreme Court, the statute is unique:

---

[8]At the time the United States Supreme Court decided Roadway, § 1927 focused exclusively on excess *costs* incurred by an attorney's conduct. Roadway, 447 U.S. at 756 n. 3.  The Supreme Court found that "costs" did not include attorney's fees.  Id. at 762-63.  The Court noted Congress was considering legislation aimed at expanding § 1927 to include costs, expenses, and attorney's fees.  Id. at 760 n. 8.  Indeed, on September 12, 1980, almost three months after the Court decided Roadway, Congress amended § 1927 as reflected in its current version.

> [Section] 1927 does not distinguish between winners and losers, or between plaintiffs and defendants. The statute is indifferent to the equities of a dispute and to the values advanced by the substantive law. It is concerned only with limiting the abuse of court processes.

Roadway, 447 U.S. at 762. Importantly, § 1927 covers only the *excess* costs, expenses, and attorney's fees incurred by opposing counsel's conduct, not the total costs, expenses, and attorney's fees incurred during the litigation. Id. at 756, n. 3.

The district court must provide an attorney with fair notice and an opportunity to be heard before imposing sanctions under § 1927. Clark, 460 F.3d at 1011 (citing Fuqua Homes, Inc. v. Beattie, 388 F.3d 618, 623 (8th Cir. 2004). Sanctions under § 1927 are not mandatory, but rather are within the sound discretion of the district court. Burull v. First Nat'l Bank of Minneapolis, 831 F.2d 788, 790 (8th Cir. 1987). Because of the district court's " 'intimate familiarity with the case, parties, and counsel[,]' " its determination as to whether sanctions are appropriate is accorded substantial deference. Lee v. First Lenders Ins. Services, 236 F.3d 443, 445 (8th Cir. 2001) (quoting O'Connell v. Champion Int'l Corp., 812 F.2d 393, 395 (8th Cir. 1987)). Courts, however, should be mindful of the fact that "[t]he imposition of sanctions is a serious matter and should be approached with circumspection." O'Connell, 812 F.2d at 395. "Because section 1927 is penal in nature, it should be strictly construed so that it does not dampen the legitimate zeal of an attorney in representing his client." Lee v. L.B. Sales, Inc., 177 F.3d 714, 718 (8th Cir. 1999) (citation and internal quotation marks omitted).

Sanctions under § 1927 are appropriate when counsel's conduct, " 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.' "[9]  Clark, 460 F.3d at 1011 (quoting Tenkku v. Normandy Bank, 348 F.3d 737, 743 (8th Cir. 2003)).  "Reckless" is defined as lacking in caution, foresight, or consideration, or deliberately courting danger.  Webster's New International Dictionary 1896 (3d ed. 2002).  Words synonymous with "reckless" are "foolhardy," "rash," "careless," "neglectful," "thoughtless," "improvident," and "irresponsible."  Id.  Black's law dictionary defines "reckless disregard" as "[c]onscious indifference to the consequences (of an act)" and "reckless" as "[c]haracterized by the creation of a substantial and unjustifiable risk of harm to others and by a conscious (and sometimes deliberate) disregard for or indifference to that risk; heedless; rash."  Black's, *supra*, at 1276.

---

[9]Prior to the Clark decision, it was unclear if § 1927 also required a finding of bad faith.  See, e.g., NAACP-Special Contribution Fund v. Atkins, 908 F.2d 336, 340 (8th Cir. 1990) ("This court has indicated that the language of § 1927 appears to require both a finding of objectively unreasonable behavior and a finding of bad faith."); O'Connell, 812 F.2d at 395 n. 2 ("We do not hold that § 1927 contains only an objective standard, as opposed to both an objective and subjective standard.  The words of the statute require unreasonable *and* vexatious conduct.  28 U.S.C. § 1927.  Whether this requires a finding of bad faith in addition to unreasonable conduct is a question that is not before us.").  In Clark, the Court of Appeals for the Eighth Circuit clarified the standard by which a district court may award sanctions under § 1927.  The sanctioned attorney argued § 1927 required a finding of both objective unreasonableness and subjective bad faith, relying on *dicta* in NAACP.  Clark, 460 F.3d at 1008.  The Eighth Circuit seemed to reject this argument, stating "[o]ur subsequent holdings make clear, however, that the statute permits sanctions when an attorney's conduct, 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.' "  Id. (quoting Tenkku, 348 F.3d at 743).

The court may assess only those excess costs, expenses, and attorney's fees that bear "a causal connection between the objectionable conduct of counsel and multiplication of the proceedings." Lee, 236 F.3d at 445 (citation and internal quotation marks omitted). "[A] sanctioning court must make an effort to isolate the additional costs and fees incurred by reason of conduct that violated § 1927. But the task is inherently difficult, and precision is not required." Id. at 446. Further, when ruling on a motion for sanctions, a district court must make findings of fact to "ensure that the sanctions address the excess costs resulting from the misconduct, provide the sanctioned party an adequate opportunity to respond, and facilitate meaningful appellate review." Lee, 177 F.3d at 718; see also Tenkku, 348 F.3d at 743 (when imposing sanctions, a district court must make factual findings of misconduct and provide an adequate explanation).

The court does not take lightly the sanctioning of an attorney. The court considered carefully the record in this case and the legal tenets articulated by the Eighth Circuit and the Supreme Court. The court provided both parties and their counsel fair notice and a reasonable opportunity to be heard on this issue, although Mr. O'Neal, on behalf of himself and his client, declined to take advantage of the opportunity.

The court considers Mr. O'Neal's conduct objectively as required by the Eighth Circuit. Under this standard, it is clear Mr. O'Neal recklessly disregarded his duties as an officer of the court. Mr. O'Neal's conduct was both unreasonable and vexatious as contemplated by § 1927.

Mr. O'Neal learned of Dr. Shinnick's unavailability a week prior to the December 30, 2010, hearing. Mr. O'Neal offered no reasonable justification or excuse for his failure to immediately notify the court of this information. If Mr. O'Neal simply contacted the court when he learned of Dr. Shinnick's unavailability, the court would have had sufficient time to cancel the hearing and reschedule it for a later date. By his inaction, Mr. O'Neal carelessly wasted not only Mr. Sattler's time, but the court's as well.

The court gives little credence to Mr. O'Neal's explanation for why he wanted the hearing to proceed despite Dr. Shinnick's absence. Mr. O'Neal determined the parties needed to convene to "get [the status conference] out of the way[.]" (HT 7:7-8). The court cannot understand Mr. O'Neal's concern. Prior to the hearing, the court and counsel for both parties communicated on multiple occasions to schedule the pretrial conference and trial in this case. All those concerned agreed upon May 16, 2011, as the date for the pretrial conference, and July 27, 2011, as the commencement date for the jury trial. In light of this agreement, the court certainly would not have asked out-of-state counsel to travel to Rapid City *solely* for a status conference. The court easily could have scheduled a telephonic status conference. It was necessary for counsel to expend time and resources to attend personally an important hearing such as a Daubert hearing, but not a simple status conference to confirm dates already agreed upon by the parties.

As an experienced attorney, Mr. O'Neal should have understood this distinction. Mr. O'Neal also should have understood the court could not

proceed with a Daubert hearing without Dr. Shinnick, the very witness being challenged.  If Mr. O'Neal did not understand these basic principles, he should have contacted the court when he learned of Dr. Shinnick's unavailability and sought guidance on how to proceed.  Mr. O'Neal's failure to do so was unreasonable, vexatious, and in reckless disregard of his duties to the court.

Consequently, the court finds it appropriate to impose sanctions against Mr. O'Neal pursuant to § 1927.  Because the court finds sanctions are warranted under § 1927, it need not exercise its inherent authority to levy sanctions against Mr. O'Neal.  The court now turns to the appropriate scope of an award to BNSF.

**B.     The Amount of Fees and Costs that Should be Awarded**

The court may impose only the excess attorney's fees and costs reasonably incurred by Mr. O'Neal's improper conduct.  Mr. Sattler provided an itemized log and bills detailing the attorney's fees and costs incurred by BNSF. (Dockets 55 & 56).  Mr. Sattler did not include attorney's fees or costs not multiplied by or causally connected to the December 30, 2010, hearing. (Docket 55, Affidavit; Docket 56, Affidavit).  The court carefully reviewed the itemized log and bills.  The court finds all of the costs incurred by Mr. Sattler and billed to BNSF are reasonable and will require duplication as a result of Mr. O'Neal's conduct.  These costs include the following: $805.30 in airfare; $64.37 in lodging expenses; $48.53 in car rental expenses; $24 in parking expenses; $55 in mileage; and $17.18 in meals–costs necessarily incurred by Mr. Sattler's mandatory attendance at the failed Daubert hearing.  (Docket 55,

14

Exhibits A, C-G). Defendant will incur these same costs when Mr. Sattler returns to attend the March 16, 2011, Daubert hearing. Thus, the court orders Mr. O'Neal to reimburse BNSF personally in the amount of $1,014.38 in costs.

The court further finds BNSF is entitled to recover $3,570 in attorney's fees billed by Mr. Sattler. (Docket 55, Exhibits A & B & Docket 56). BNSF seeks to recover the equivalent of 11.5 billable hours charged by Mr. Sattler to travel to and from Rapid City and to attend the failed Daubert hearing. (Docket 56, Exhibit H). The court finds these fees are reasonable. Further, the court finds these fees will be duplicated as Mr. Sattler will have to travel to and from Rapid City to attend the March 16, 2011, Daubert hearing and will spend time in court. BNSF also seeks to recover some, but not all of the fees generated by Mr. Sattler in preparing for the failed Daubert hearing. Id. In fact, BNSF seeks to recover the equivalent of only 7.5 billable hours in preparation time, that is, only the preparation time which will need to be repeated for the March 16, 2011, Daubert hearing. Id.; see also Docket 56, Affidavit. The court finds BNSF's request to be appropriate and reasonable. Given the lengthy lapse of time between the two hearings, it is understandable Mr. Sattler will need to prepare a second time for the upcoming Daubert hearing. Finally, BNSF seeks to recover the equivalent of two billable hours charged by Mr. Sattler to draft the motion for expenses and fees and supporting documentation. (Docket 56, Exhibit H at p. 3). Mr. Sattler would not have had to draft such a motion if the Daubert hearing had taken place as scheduled.

In sum, the court finds the 21 hours billed by Mr. Sattler are reasonable and will require duplication. Mr. Sattler charges a rate of $170 per hour in attorney's fees, which the court finds reasonable and customary. Thus, the amount owed by Mr. O'Neal to reimburse BNSF for Mr. Sattler's fees is $3,570.

## CONCLUSION

In accordance with the above discussion, it is hereby

ORDERED that BNSF's motion for expenses and fees (Docket 53) is granted in full. Pursuant to 28 U.S.C. § 1927, attorney G. Michael O'Neal shall personally reimburse BNSF in the total amount of $4,584.38, comprised of $3,570 in attorney's fees and $1,014.38 in costs. Such monies shall be paid within sixty (60) days of the date of this order, unless good cause is shown for an extension.

Dated March 4, 2011.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE